**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony D. JONES, Defendant–
Appellant.**

No. 00–1214.

United States Court of Appeals,
Sixth Circuit.

June 29, 2001.

Before KEITH, BATCHELDER, and MOORE, Circuit Judges.

BATCHELDER, Circuit Judge.

Anthony Jones ("Jones") appeals the sentence imposed upon him after this court remanded his case to the district court for resentencing. Jones complains that the district court again sentenced him based upon an quantity of drugs not supported by the evidence. We agree with Jones and again vacate his sentence and remand the case. This time, however, we do so with instructions that the district court resentence Jones forthwith within the range set out in the Sentencing Guidelines for an offense level premised on Jones's responsibility for 432.15 grams of cocaine, the quantity that the evidence in the record supports.

## FACTS & PROCEDURAL BACKGROUND

In January 1995, the government filed a second superseding indictment that charged Jones and seven others with a variety of crimes relating to a cocaine-distribution ring in Saginaw, Michigan. The indictment charged Jones in only two counts: Count One for violating 21 U.S.C. § 846 (conspiring to possess and intending to deliver crack or powder cocaine in violation of § 841(a)(1)), and Count Thirty–Five for violating 21 U.S.C. § 843(b) (using a telephone to make drug deals). Count One did not specify the amount of cocaine attributed to Jones and his co-conspirators.

In December 1995, a federal jury convicted Jones on both counts. The district court found that Jones was responsible for between 500 and 2,000 grams of cocaine. Accordingly, the district court sentenced Jones to 102 months in federal prison on the cocaine count and to 48 months on Count Thirty–Five. Jones appealed his sentence. *United States of Am. v. Jones*, No. 96–1597, 1998 WL 279379, 145 F.3d 1335 (6th Cir. May 21, 1998). On appeal, we affirmed the district court's finding that Jones was responsible for 432.15 grams of cocaine. *Jones*, 1998 WL 279379, at *16, 145 F.3d 1335.

The district court had also found that Jones was likely selling cocaine during a 16–week period from mid-June 1994 (shortly before he was discharged from the Army) to October 19, 1994, and that Jones had sold an additional 453.6 grams of cocaine during that 16–week period. Although we held that the district court had "ample basis" for its finding that Jones had been involved in selling cocaine during that period, and we viewed as "conservative" the district court's finding that Jones was selling one ounce of cocaine per week during that 16–week period, we held that the court's finding that he was responsible for the sale of the additional 453.6 grams was merely an estimate and lacked any "numerical grounding." *Jones*, 1998 WL 279379, at *16, 145 F.3d 1335. We held that mere estimates that lack record support were not sufficient to put Jones into a higher sentencing range, and we remanded the case, with instructions to the district court:

The district court must provide some basis for its calculation. Jones's lifestyle, for instance, could provide some evidence of his income, which would provide some evidence of the level of his drug-dealing activity. To use this evidence, however, the district court must say so, and make mathematical calculations with some indicia of reliability in the record.

*Jones*, 1998 WL 279379, at *16, 145 F.3d 1335.

During the resentencing hearing, the government conceded that "the difficulty

with that is that there are—there was nothing in the record as to the cost of, or even an estimated cost of, Jones's visits to the social clubs, the amount that was being spent on prostitutes, alcohol, and whatever else went along[.]" The district court repeatedly asked the government to provide some mathematical calculations to support a finding about how much Jones's lifestyle during the 16-week period in question would have cost, or how much Jones had actually spent during that period. The district court continued the hearing to allow the government to come up with such a calculation. The government never did.

The district court tried to provide some basis for its finding that Jones was selling an ounce of cocaine per week during the 16 weeks between mid-June 1994 and October 1994. The following excerpt from transcript for the resentencing hearing is telling:

> COURT: Do we have evidence of what this kind of lifestyle cost; social club, drinking, eating, carousing, consorting with prostitutes and *all this other evidence with respect to expenditures?*
>
> AUSA: I don't believe so, Your Honor. You're asking what would a night in a social club, for example, cost for a typical round of drinks?
>
> COURT: As an example, if I learned that it was a—that you could like Mexico on $5 a day or if it were equivalent of that, something very inexpensive, we have a different picture. My impression is that money as well as liquor was

flowing freely, but I don't—I'm just not sure that I have evidence and I came down to the conclusions that you suggested to me[,] and I'm in accord with all of the factual circumstances, *but I don't know if I have enough facts to make findings that are sustainable with respect to that kind of net worth or expenditure circumstance.*

> \* \* \* \* \* \*
>
> AUSA: I believe you can take judicial notice of the fact that you could not sustain a lifestyle or make findings rather that a lifestyle such as Jones [and his coconspirators] were experiencing during those four months could not have been enjoyed on less than $200 a day to eat, to drink, to drive around to consume alcohol. It just couldn't be done.
>
> COURT: *Thank you, Mr. [AUSA], and I agree.* The Findings of Fact proposed by the Government are not objected to with respect to each of the facts that are asserted therein. Some to the extent that the conclusions or interpretations are suggested or implied by the Government are objected to.

(Emphasis added). Based upon these conclusions, the district court resentenced Jones to same 102 months on Count One (the cocaine charge) as the court had imposed the first time.

 Jones filed a timely appeal, arguing that his new sentence suffers the same infirmities as did his first: there is no factual basis to attribute to him more cocaine than the 432.15 grams that the we approved of in the first appeal.[1]

---

1. Jones also contends that the district court violated his due process rights by affording the government an opportunity to present additional evidence at the resentencing hearing; that the district court's delay in resentencing him violated his Sixth Amendment speedy trial rights; and that his case raises an *Apprendi* issue. *See generally Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This latter contention is merit-

less because Jones was sentenced to less than the statutory maximum permitted under 21 U.S.C. § 841(b)(1)(C). *See United States v. Page,* 232 F.3d 536, 543 (6th Cir.2000) (holding that *Apprendi* not implicated when defendants convicted of conspiring to distribute an undetermined amount of crack cocaine and those defendants are sentenced to less than 20 years, "the maximum sentence that can be imposed" under § 841(b)(1)(C)). The due

## DISCUSSION

■ We review for clear error the district court's factual findings that underlie the sentence. *See United States v. Robinson*, 898 F.2d 1111, 1115–16 (6th Cir.1990).

■ Jones contends that he cannot be held responsible for any quantity of cocaine beyond the 432.15 grams which we previously held was supported by the evidence. He first points out that the government's sentencing memorandum identified no new evidence and that the government merely rehashed the same evidence that we previously concluded would not support holding Jones responsible for any more than 432.15 grams. Jones stresses that the district court, contrary to what we directed on remand, engaged in no fact-based mathematical calculations to determine how much money Jones made selling drugs during the 16 weeks following his release from the Army. In particular, Jones claims that there is no record support for the district court's finding that during the period in question, Jones spent money at bars, paid for prostitutes, and had living expenses in excess of $500 per week.

In response, the government reiterates that during that time period, Jones and his co-conspirators frequented Saginaw-area nightclubs. The only specific evidence the government identifies is that the bars charged a $5.00 cover; the government identifies no record evidence about who paid the $5.00 cover charge or whether the charge was paid at all.

The government relies heavily on the following assertion: "the inference [is] that [Jones] spent money consistently at such establishments for liquor and entertainment." In that same vein, the government says: "[T]he sentencing court's conclusion

that [Jones hired prostitutes 3 or 4 times a week] is based on logical inferences from the record. Even if [not], it is apparent from the record that [the company of women] certainly required the expenditure of Jones's funds." But again, the government identifies no evidence showing that Jones spent even $1 for prostitutes and on bar tabs at Saginaw-area nightclubs.

The government points to police testimony in the record about the business practices of crack cocaine dealers and how they would double their investment when they sold to street-level users—referred to as "doubling up," and argues that this testimony supports the district court's conclusion that Jones made $500 or more for each ounce of cocaine that he sold between mid-June and October 1994. But the government cites not one example of Jones's actually doing this.

Moving to Jones's living expenses, the government cites several facts that it says support the district court's conclusion that Jones's living expenses totaled at least $500 per week from mid-June through mid-October 1994:

● Jones's supporting two dependent children that he listed on his 1993 Federal Income Tax Return.

● Jones's making regular weekend car trips from Fort Knox, Kentucky, to Saginaw, Michigan, just before he got out of the Army.

● Jones's owning and operating a Mazda car (as evidenced by car-service records) and driving 2,000 miles from January through February 1994; 7000 miles between February and March 1994; and 5,000 miles between March and May of 1994.

process and Sixth Amendment complaints are raised for the first time before us on appeal, and we find no plain error.

● Jones's running up telephone (and cell phone) bills for March through April of 1994 ($622.27) and for August of 1994 ($194.91).

As Jones points out, the problem with this evidence is that it says little about the relevant time period—mid-June through mid-October 1994.

The court's findings of fact hinged not on the record evidence—much of which said nothing about the relevant time period—but on the court's taking judicial notice of what Jones's lifestyle must have cost. In turn, the court's taking of judicial notice hinges upon the court's assumptions about what Jones was doing and what those things cost. For example, the court pointed to cell phone bills—run up for March and April 1994, before the relevant time period of June to October—to conclude "[Jones] was a free spender . . . There's no reason to think that he was doing anything different in the social clubs." Finally, the district court cited Jones's 1993 tax return and the dependents listed therein to conclude Jones supported those dependents in 1994, even though there was no evidence that Jones supported them or how much money—if any—Jones gave them.

The court recognized at the resentencing hearing that the government had provided virtually no evidence from which the findings regarding the cost of Jones's lifestyle could be made. Nevertheless, despite our having directed the district court to "make some mathematical calculations with some indicia of reliability in the record," the court essentially relied on judicial notice of the high cost of the life style the government attributes to Jones to make findings of fact to support the quantity of cocaine the government believes Jones sold during the 16–week period. That is not what we directed the district court to

do on remand, and the record still does not contain evidence from which we could determine whether those findings are clearly erroneous. We therefore must again vacate Jones's sentence on Count One of the superseding indictment.

■ While it may indeed be, as we said when we last remanded this case, "unfortunate" to attribute to Jones no cocaine sales other than those evidenced by a wiretap, it is the government's obligation to prove the quantity of drugs which the government claims Jones sold and for which the government asks that he be sentenced. The government has wholly failed to carry its burden.

When this case was first before us on appeal, we held that the district court's finding that Jones was responsible for 432.15 grams of cocaine was not clearly erroneous. Today we hold that the government has failed to prove that Jones was responsible for any specific quantity of cocaine beyond the 432.15 grams and that Jones may therefore not be sentenced on the basis of any quantity of cocaine greater than 432.15 grams. Accordingly, we VACATE the sentence imposed by the district court on Count One and REMAND the case to the district court with the instruction that Jones be resentenced forthwith in accordance with this opinion.